Exhibit 1

## COMPROMISE AND SETTLEMENT AGREEMENT

This Compromise and Settlement Agreement (the "Settlement Agreement") is entered into by and between Defendant SVTC Technologies, Inc. ("SVTC Inc.") for itself and on behalf of SVTC Solar, Inc.; and SVTC Technologies, LLC (the three companies, collectively, "SVTC"), on the one hand, and Plaintiff Hoa Tran ("Class Plaintiff"), on behalf of himself and on behalf of each person who is a member of the WARN Class (as defined in paragraph A.3 below) and thus eligible to participate in the settlement (collectively the "Class Members") on the other hand.  SVTC, the Class Plaintiff and the Class Members are sometimes collectively referred to in the Settlement Agreement as the "Parties."

## RECITALS

1.      On September 24, 2013, Plaintiff, a former employee of SVTC, acting on behalf of a putative class, filed an action against SVTC, captioned *Hoa Tran v. SVTC Technologies, et al.*, Case No. 12-03034-EJD (the "Action").  Plaintiff alleged that SVTC violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act") as well as California Labor Code § 1400 *et seq*. (the "California WARN Act") by failing to provide 60 days' notice of termination to employees who worked at the corporate offices and fabrication facilities in San Jose, California, and fabrication facility in Austin, Texas, and who were terminated on or about September 28, 2012.

2.      On or about October 15, 2012, SVTC Technologies, LLC, executed a general assignment for the benefit of creditors ("Assignment") in favor of California Assignments, LLC.  Prior to the Assignment SVTC sold it's Austin, Texas, fabrication facility to Tezzaron Semiconductor which then rebranded the facility to operate as Novati Technologies, Inc. and hired most or all of SVTC's workers at that facility.

3.      On October 17, 2012, SVTC answered the allegations in the Complaint in the WARN Action, set forth a number of affirmative defenses and disputed all claims.

4.      On October 31, 2012, SVTC filed a "Request for Exception from the California WARN Act § 1402.5" with the Director of the California Department of Industrial Relations.

5.      On or about November 30, 2012, SVTC Solar, Inc., completed an asset sale to the Research Foundation for the State University of New York on behalf of the College of Nanoscale Science and Engineering.

6.      SVTC Inc., which is the parent company of SVTC Solar, Inc., and SVTC Technologies, LLC, also plans to liquidate.

7.      There are significant, complex legal and factual issues regarding whether the WARN Act and California WARN Act apply to the terminations at issue and the viability of the WARN Act claims in connection with the termination of the Class Members.  SVTC contends that it did not violate the WARN Act or California WARN Act based on numerous affirmative defenses and has filed a petition for exemption from the WARN Act with the state of California. SVTC also contends that even if liability were found, the amount of damages would be far less than Plaintiff alleges, and may unlikely be recovered given the strained financial position of SVTC and the ongoing liquidation of the company.

8.      The Parties have engaged in informal document discovery and shared their respective analyses of the legal and factual issues relevant to the claims in an effort to assess the relative merits of the claims of the plaintiff and the defenses to those claims.  The Parties agree that the discovery conducted in the Actions has been sufficient to assess reliably the merits of the respective parties' positions and to compromise the issues on a fair and equitable basis.

5293877.1/45058-00001

9.      To avoid extensive, costly litigation over these issues, the Parties engaged in negotiations regarding a possible global resolution of the Action.  As a result of those negotiations, the Parties have agreed to fully and finally compromise, settle, and resolve any and all demands, claims, damages, and causes of action, present and future, which were asserted or could have been asserted in the Action, including, but not limited to, any claims against SVTC for back pay or benefits based on or arising out of any federal, state or local statute, ordinance or regulation (the "WARN Class Claims"), on the terms set forth below.

## TERMS AND CONDITIONS OF SETTLEMENT

**A.      SETTLEMENT AMOUNT, CONDITIONAL CERTIFICATION AND PRELIMINARY APPROVAL PROCEDURE**

1.      SVTC agrees to cause to be paid the total amount of $117,500 to resolve the WARN Class Claims, which shall include all amounts to be paid in exchange for this settlement and compromise, including, without limitation, attorneys' fees and costs, including the costs of administration of the settlement, which include but are not limited to employer taxes associated with the payments made to individuals ("Settlement Amount").

2.      This Settlement Agreement is subject to, and conditioned upon, entry of the Final Approval Order (as defined in paragraph B.7) by the District Court approving the Settlement Agreement under Rule 23 of the Federal Rules of Civil Procedure, in accordance with applicable law and local rules.  The Class Plaintiff will file a Motion for Conditional Certification and Preliminary Approval of Settlement pursuant to Federal Rule of Civil Procedure 23 (the "Preliminary Approval Motion") in the Action seeking an Order in substantially the form attached to this Settlement Agreement as <u>Exhibit A</u> ("Preliminary Approval Order").  At the hearing on the Preliminary Approval Motion, Class Plaintiffs will request that the District Court

set a hearing, to be conducted after completion of the notice procedures set forth in

paragraphs B.1 through B.4 below, for the purpose of determining the fairness, adequacy and

reasonableness of the settlement ("Fairness Hearing").

3.    The Parties agree, for settlement purposes only, that the District Court may

conditionally certify the following class in connection with the WARN Action pursuant to Rule

23(b)(3) of the Federal Rules of Civil Procedure:

> "All persons who were employed by SVTC in San Jose, California and were
> terminated on or within 45 days of September 28, 2012, without receiving a full
> 60 days' notice in advance of their termination."

"WARN Class Members" shall mean all individuals included within the definition of the WARN

Class.  The "WARN Settlement Class Members" shall mean all WARN Class Members, with the

exception of those individuals who timely notify Class Counsel that they elect not to participate

in this settlement, *i.e.*, elect to "Opt Out," in accordance with the procedures set forth in

paragraph B.3 below.

4.    SVTC consents to the appointment of Girard Gibbs LLP ("Class Counsel") as

class counsel for the Class Members, in pursuing and settling the WARN Class Claims.

5.    Class Counsel has informed SVTC that they intend to file a motion seeking

attorneys' fees in the amount of up to 25% of the settlement fund, payable from the Settlement

Amount.  SVTC agrees not to oppose a request for attorneys' fees by Class Counsel up to

$29,375.  In addition, Class Counsel has informed SVTC that they intend to seek reasonable

costs payable from the Settlement Amount for out-of-pocket costs and expenses, including the

costs of administration of this settlement, which are expected not to exceed $5,000.   SVTC

agrees not to oppose Class Counsel's request for costs and expenses, which are expected not to

exceed $7,500.  The payment to Class Counsel of attorneys' fees and costs, as may be awarded

4

by the District Court, shall constitute payment in full for Class Counsel's work on behalf of the Class Members.  The attorneys' fees and costs paid to Class Counsel shall, upon approval by order of the District Court shall constitute the entirety of attorneys' fees paid to Class Counsel.

6.      The Parties agree, for purposes of settlement only, that Plaintiff Tran is an adequate class representative for the WARN Class.

7.      Class Counsel has informed SVTC that they intend to retain a "Claims Administrator" to assist them in the administration of the settlement, including the distributions to WARN Settlement Class Members in the amounts required by the Settlement Agreement and as directed by Class Counsel.  The Claims Administrator shall establish a settlement fund to effectuate the distribution of the Settlement Amount as provided by the Settlement Agreement and the orders of the District Court.

8.      In addition to distributing payments to Settlement Class Members, the Claims Administrator will also distribute to Class Counsel the attorneys' fees and costs approved by the District Court and provide each Class Counsel with an IRS Form 1099 for such amounts.

B.      **NOTICE PROCEDURES, OPT OUTS AND FINAL APPROVAL PROCEDURE**

1.      SVTC agrees to cause to be transmitted to the Claims Administrator and Class Counsel, within five business days following the entry of the Preliminary Approval Order described in paragraph A.2, a list of the names and last known addresses of the Class Members, which shall also include each WARN Class Member's rate of compensation.

2.      Class Counsel shall provide each WARN Class Member with a settlement notice in a form substantially similar to that attached hereto as <u>Exhibit B</u> ("WARN Settlement Notice") and a notice of election to opt out of the settlement in substantially the form attached to this

Settlement Agreement as <u>Exhibit C</u> (the "Opt-Out Notice Form").  Class Counsel shall transmit the WARN Settlement Notices and Opt-Out Notice Forms via first-class mail addressed to the WARN Class Members at the addresses provided by SVTC no later than 10 business days after SVTC causes to be transmitted the Class Member List to the Claims Administrator and Class Counsel.

3. Any Class Member wishing to Opt Out must complete and sign an Opt-Out Notice Form and send the completed and signed Opt-Out Notice Form via first class mail to Class Counsel or (at the address provided on the Opt-Out Notice Form) not later than 45 days after Class Counsel mails the Class Settlement Notice and Opt-Out Notice Form to the Class Members (the "Opt-Out Bar Date").  The Class Settlement Notices and Opt-Out Notice Form will specify the Opt-Out Bar Date.  Any Opt-Out Notice Form received by Class Counsel in an envelope bearing a postmark on or before the Opt-Out Bar Date will be deemed timely.  Any Class Member who mails the Opt-Out Notice Form by the Opt-Out Bar Date shall be deemed to have "Opted Out."  Five business days after the Opt-Out Bar Date, Class Counsel shall provide SVTC and the Claims Administrator a list of the Class Members who have Opted Out.

4. Each Class Member who does not mail an Opt-Out Notice Form by the Opt-Out Bar Date will be bound by this settlement.

5. If any Class Member, timely and properly Opts Out of the proposed WARN Class, that Class Member's rights and obligations will be unaffected by this Settlement Agreement and that Class Member shall have the same rights and obligations as he or she would have had if the WARN Action had never been filed and this Settlement Agreement had never been executed.  Any Class Member who Opts Out shall retain his or her rights against SVTC, if any.  SVTC reserves all rights against any Class Members who Opt Out.

6

6.      Notwithstanding anything to the contrary in this Settlement Agreement, in the event that the number of WARN Class Members who Opt Out meets or exceeds 15% of the total number of WARN Class Members, SVTC may, upon consultation with the Plaintiff in good faith, elect to terminate the Settlement Agreement as to the WARN Action within 15 days after the Opt-Out Bar Date.

7.      Following the Fairness Hearing, the Parties will submit a final proposed order (a) approving this Settlement Agreement and the payment of attorneys' fees and costs to Class Counsel in the amount awarded by the Court ("Final Approval Order"), and (b) dismissing the action with prejudice in substantially the form attached hereto as Exhibit D.

8.      If the Court for any reason does not enter the Final Approval Order or the Final Judgment, then:

  a.  The Settlement Agreement, the recitals contained herein and the stipulated certification of the WARN Class shall be deemed null and void *ab initio* and shall be of no force or effect whatsoever, and the Parties and Class Members shall be deemed to have reverted to their respective status as of the date and time immediately prior to the execution of this Settlement Agreement;

  b.  SVTC, or any other party-in-interest shall be free to object to and/or defend against the Settled Claims or any other claims asserted by the proposed Class Members.  Execution of this Settlement Agreement SVTC does not waive any defense or objection to any claims asserted or that may be asserted by the proposed Class Members;

  c.  Neither this Settlement Agreement, nor any of the statements contained herein, shall be admissible in any proceeding involving the Parties for any purpose

5293877.1/45058-00001

whatsoever nor shall any Party refer to or utilize this Settlement Agreement in any proceeding involving the Parties, except one to enforce its terms; and

d.   Neither the Preliminary Approval Motions nor any of the pleadings filed in support of the Preliminary Approval Motions shall be admissible in any proceeding involving the Parties.

9.   If SVTC elects to terminate this Settlement Agreement as to the WARN Action pursuant to paragraph B.8, then:

a.   The Settlement Agreement and the recitals contained herein as to the WARN Action and the stipulated certification of the WARN Class shall be deemed null and void *ab initio* and shall be of no force or effect whatsoever, and the Parties and WARN Class Members shall be deemed to have reverted to their respective status as of the date and time immediately prior to the execution of this Settlement Agreement;

b.   SVTC, or any other party-in-interest shall be free to object to and/or defend against the WARN Class Claims or any other claims asserted by the proposed WARN Class Members.  Execution of this Settlement Agreement by SVTC does not waive any defense or objection to any claims asserted or that may be asserted by the proposed WARN Class Members;

c.   Neither this Settlement Agreement, nor any of the statements contained herein, shall be admissible in any proceeding involving the Parties for any purpose whatsoever nor shall any Party refer to or utilize this Settlement Agreement in any proceeding involving the Parties; and

8

      d.   Neither the Preliminary Approval Motions nor any of the pleadings filed in support of the Preliminary Approval Motions shall be admissible in any proceeding involving the Parties.

**C.**      **SETTLEMENT PAYMENTS**

      1.    "Settlement Effective Date" means the later of the date following the entry of a Final Judgment, and either (i) the expiration of the time for filing of an appeal from the Court's entry of a Final Judgment, or (ii) if a timely appeal is filed, the final resolution of that appeal (including any requests for rehearing and/or petitions for review).

      2.    Within 10 business days after the Settlement Effective Date, SVTC shall cause to be remitted the Settlement Amount of $117,500, to the Claims Administrator.  The money remaining for distribution to Settlement Class Members, after payment of settlement administration expenses, and attorneys' fees and costs as approved by the Court to Class Counsel, shall be allocated to the Settlement Class Members as set forth in paragraphs C.3.

      3.    Each WARN Settlement Class Member will be entitled to a payment derived by allocating a pro rata amount to each WARN Settlement Class Member based on the maximum amount of his or her potential claim.  The payments to WARN Settlement Class Members shall be calculated as follows:

      a.    The potential claim of each WARN Settlement Class Member will be derived by (1) calculating each WARN Settlement Class Member's daily rate which is determined for hourly employees by multiplying their hourly rate times 8 and for salaried employees by dividing their bi-weekly pay by 10 and then (2) multiplying each WARN Settlement Class Member's daily rate by (i) 60 days if the Class Member was terminated on or before September 24, 2012; or (ii) the number of

days between the Class Member's termination date and November 23, 2012 if the

Class Member was terminated between September 25, 2012 and November 23,

2012 ("Individual WARN Claim");

b.    The "Aggregate WARN Claim" will be calculated by adding all of the Individual

WARN Claims together;

c.    Each WARN Settlement Class Member's "Pro Rata Factor" will be calculated by

dividing (i) each WARN Settlement Class Member's Individual WARN Claim by

(ii) the Aggregate WARN Claim;

d.    The amount each WARN Settlement Class member shall receive under this

Settlement Agreement shall then be calculated by multiplying (i) $117,500 less

that portion of settlement administration expenses, attorneys' fees and costs as

approved by the District Court, by (ii) each WARN Settlement Class Member's

Pro Rata Factor.

4.    Class Counsel shall, within five (5) days after the entry of the Final Judgment,

provide to the Settlement Administrator, a list of each WARN Settlement Class Member and the

amount each such individual will receive based upon the formulas set forth in paragraphs C.3

above (as to each such individual, the "Settlement Payment").

5.    The Claims Administrator shall withhold any employee payroll tax withholdings

required by federal, state or local law from the distributions to the Settlement Class Members

receiving payments under this Settlement Agreement and shall issue a Form W-2 reflecting such

payments to each Settlement Class Member.  These amounts shall include the employee and

employer portion of all applicable federal, state and local taxes.  For purpose of calculating

applicable taxes, the Parties agree that 100% of the amounts to be paid to the Settlement Class

Members shall constitute wages reportable on IRS Form W-2.

6.      If any settlement checks mailed to Settlement Class Members remain uncashed as

of the 181st day after the Claims Administrator mails the settlement checks to the Settlement

Class Members, such funds (the "Residual Funds") shall be disbursed first to any Settlement

Class Members who were unidentified at the time the Claims Administrator issued the Class

Settlement Notices, such claims being paid based on the formulas set forth in paragraphs C.3,

and then second, as a *cy pres* distribution to the Legal Aid Society – Employment Law Center of

San Francisco.  No portion of the Residual Funds will revert to SVTC for any reason, or be

retained by Class Counsel.

## D.      RELEASE OF CLAIMS

1.      Except for the rights arising out of, provided for, or reserved in this Settlement

Agreement, upon the payment of the Settlement Amount to the Claims Administrator, the

Settlement Class Members, for and on behalf of themselves, and their respective successors and

assigns (collectively, the "Releasing Parties"), do hereby fully and forever release and discharge

SVTC and their respective officers, directors, shareholders, agents, employees and other agents,

and all of their respective predecessors, successors and assigns (collectively, the "Released

Parties"), of and from any and all claims, demands, debts, liabilities, obligations, liens, actions

and causes of action, costs, expenses, attorneys' fees and damages of whatever kind or nature, at

law, in equity and otherwise, whether known, unknown, anticipated, suspected or disclosed,

which the Releasing Parties may now have or hereafter may have against the Released Parties,

which relate to or are based on the WARN Act, California WARN Act, or any obligations to pay

wages or benefits under any federal, state or local law or regulation arising out of the termination

of the Class Members' employment with SVTC, including, but not limited to the Settled Claims. The claims released hereunder are referred herein as the "Released Claims." The Released Parties expressly reserve the right to object to, offset or oppose any and all claims, obligations, or causes of action, of any type, except those claims expressly allowed hereunder.

2.      The following claims and/or rights shall not be released under paragraph D.1: (a) any claims for continuation of health or medical coverage, at the Class Member's expense, or at the expense of a beneficiary or dependent of a Class Member, to the extent allegedly required by the relevant provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"); (b) rights, if any, unrelated to any claims under the WARN Action, under SVTC's 401(k) plans; and (c) any claims that the law clearly states may not be released by settlement.

3.      The Releasing Parties and Class Counsel acknowledge that they are familiar with, and/or, in the case of the Class Members, have been informed by the Class Settlement Notices of the provisions of California Civil Code § 1542, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exists in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the defendant.

4.      With respect to the Released Claims being released hereunder, the Releasing Parties waive and relinquish, to the fullest extent that the law permits, the provisions, rights and benefits of California Civil Code § 1542 and other statutes, regulations or common law principles of similar effect. Such release, however, shall not release SVTC's obligations under this Settlement Agreement. The Releasing Parties hereby agree and acknowledge that this waiver and relinquishment is an essential term of this Settlement Agreement, without which the consideration provided to them would not have been given. In connection with such waiver and relinquishment, the Releasing Parties and Class Counsel acknowledge that they are aware that

they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, with respect to the matters released herein.  Nevertheless, it is the intent of the Releasing Parties and Class Counsel in executing this Settlement Agreement fully, finally, and forever to settle and release all such matters, and all claims relative thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action or proceeding) which are the subject of the releases granted hereunder.

5.      Approval of this Settlement Agreement by the District Court and payment of the Settlement Amount to the Claims Administrator shall operate as a full release of the Released Parties by the Releasing Parties of all Released Claims.  Upon the payment of the Settlement Amount to the Claims Administrator, all Released Claims are deemed settled, released and dismissed in their entirety, on the merits, with prejudice.

E.      **ADDITIONAL TERMS**

1.      The Parties agree that they are compromising and settling disputed claims.  Other than as set forth herein, each of the Parties shall bear its own attorney's fees, expenses and court costs.  Each of the Parties agrees it shall not commence or continue any contested matter, adversary proceeding, lawsuit, or arbitration which contests, disputes, or is inconsistent with any provision of this Settlement Agreement.

2.      This Settlement Agreement is intended to settle and dispose of all claims which are contested and denied and which relate to the WARN Action.  Nothing in this Settlement Agreement shall be construed as an admission by SVTC, of any liability or wrongdoing of any kind, and SVTC specifically denies any such liability or wrongdoing.

13

3.      Neither this Settlement Agreement nor any of its provisions, nor evidence of any negotiations or proceedings related to this Settlement Agreement, shall be offered or received in evidence in the District Court, or any other action or proceeding, as an admission or concession of liability or wrongdoing of any nature on the part of any of the Released Parties, or anyone acting on their behalf.  Nothing herein shall prevent any Party from seeking to offer this Settlement Agreement in evidence after the entry of the Final Approval Order for the purpose of enforcing the terms of the Settlement Agreement.

4.      This Settlement Agreement shall be binding upon and shall inure to the benefit of the predecessors, successors and assigns of each of the Parties to the fullest extent under the law.

5.      This Settlement Agreement shall be construed pursuant to the laws of the State of California.

6.      This Settlement Agreement and the Exhibits hereto represent the entire agreement and understanding between the Parties as to the subject matter hereof and supersede all previous agreements and discussions between the Parties as to the matters herein addressed.  This Settlement Agreement can be amended or modified only in writing and signed by all the Parties hereto, subject to any necessary District Court or other approval.

7.      The Parties may not waive any provision of this Settlement Agreement except by a written agreement that all of the Parties have signed.  A waiver of any provision of this Settlement Agreement shall not constitute a waiver of any other provision.

8.      This Settlement Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original but all of which together shall constitute but one agreement.  This Settlement Agreement may be executed by facsimile or PDF and such facsimile or PDF signature shall be treated as an original signature hereunder.

5293877.1/45058-00001

9.      This Settlement Agreement has been prepared by the joint efforts of the respective attorneys for each of the Parties.  Each and every provision of this Settlement Agreement shall be construed as though each and every party hereto participated equally in the drafting hereof.  As a result of the foregoing, any rule that the document is to be construed against the drafting party shall not be applicable.

10.     This Settlement Agreement is subject to and contingent upon the approval by the District Court and, thus, the District Court shall have exclusive jurisdiction to determine any dispute or controversy with respect to the interpretation or enforcement of this Settlement Agreement.

DATED:  May  2  , 2013                  SVTC

                                        By _____

                                        Its _____

DATED:  May ____, 2013                  _____
                                                    Hoa Tran

15

5293877.1 / 45058-00001

9.      This Settlement Agreement has been prepared by the joint efforts of the respective attorneys for each of the Parties.  Each and every provision of this Settlement Agreement shall be construed as though each and every party hereto participated equally in the drafting hereof.  As a result of the foregoing, any rule that the document is to be construed against the drafting party shall not be applicable.

10.     This Settlement Agreement is subject to and contingent upon the approval by the District Court and, thus, the District Court shall have exclusive jurisdiction to determine any dispute or controversy with respect to the interpretation or enforcement of this Settlement Agreement.

DATED:  April _____, 2013                SVTC

                                         By_____

                                         Its_____

DATED:  April _____, 2013                _____
                                                        Hoa Tran

5146474.2/45058-00001

Exhibit 2

# GIRARD GIBBS
## — LLP —

ATTORNEYS AT LAW

# FIRM RESUME

Girard Gibbs LLP specializes in class action and complex business litigation. Founded in 1995, the firm represents clients throughout the United States in securities, antitrust, product liability, employment and consumer protection actions. Girard Gibbs is currently prosecuting securities actions on behalf of Allianz of America, Inc., Fireman's Fund Insurance Company, Jefferson Life Insurance Company, Preferred Life Insurance Company, AGF Asset Management, Cornhill Life Insurance Company and Merchant Investors Insurance Company Ltd. The firm has represented the Kansas Public Employees Retirement System (KPERS) in several securities actions and currently serves as outside counsel to KPERS with respect to all securities litigation. Girard Gibbs has also served as outside counsel to the California Public Employees Retirement System (CalPERS), the California State Teachers' Retirement System (CalSTRS), the State of Wisconsin Investment Board, the Louisiana Teachers' Retirement System, the Louisiana State Employees Retirement System, and the Los Angeles County Employees Retirement Association.

The firm's partners are experienced in all aspects of class action practice and complex securities and business litigation. Girard Gibbs seeks to apply its experience as plaintiffs' attorneys to manage and resolve civil litigation effectively and efficiently on behalf of all the firm's clients. The firm also provides consulting and preventive counseling services to corporate clients and professionals on a variety of legal issues.

Girard Gibbs was distinguished as a Tier 1 law firm for plaintiffs' mass tort and class-action litigation in the 2013 "Best Law Firms" list, an annual survey published in the U.S. News & World Report's Money Issue. *The National Law Journal (NLJ)* named Girard Gibbs to its elite "Plaintiffs' Hot List" for 2012, a selection of top U.S. plaintiffs' firms recognized for wins in high-profile cases.

## PARTNERS

**Daniel C. Girard** serves as the firm's managing partner and coordinates the prosecution of various securities, antitrust and consumer legal matters handled by the firm.

He has successfully represented investors and consumers in a series of precedent-setting cases. Some of the cases in which Mr. Girard served as lead counsel include Billitteri v. Securities America, Inc., ($150 million settlement), In re American Express Financial Advisors Securities Litigation, ($100 million settlement), In re Prison Realty Securities Litigation, ($104 million settlement), In re i2 Technologies Securities Litigation, ($88 million settlement), and In re MCI Non-Subscriber Rates Litigation, ($90 million). He served as a member of the Executive Committee in the Natural Gas Antitrust Cases I, II, III and IV, antitrust litigation against numerous natural gas companies for manipulating the market for natural gas in California. The Natural Gas litigation resulted in total settlements of nearly $160 million. Mr. Girard served as lead counsel in the In re H&R Block Express IRA Litigation, which resulted in a $19.5 million settlement for low-income consumers. Mr. Girard also represented the California State Teachers Retirement System in litigation in a non-class securities action against Qwest Communications, Inc. and outside auditor Arthur Andersen, resulting in a recovery of $45 million for CalSTRS.

601 California Street, 14th Floor, San Francisco, CA 94108   711 Third Avenue, 20th Floor, New York, NY 10017
T. 415 981 4800, F. 415 981 4846   WWW.GIRARDGIBBS.COM   T. 212 867 1721, F. 212 867 1767

Mr. Girard currently serves as co-lead counsel in the In re Wal-Mart Stores Derivative Litigation, representing the California State Teachers' Retirement System in derivative litigation arising out of alleged violations of the Foreign Corrupt Practices Act.  He also serves as co-lead counsel in the In re Apple REIT Securities Litigation, where he represents investors who purchased $5 billion in shares of a series of real estate investment trusts through exclusive seller David Lerner Associates, and in In re Peregrine PFG Best Customer Accounts Litigation, representing customers of a failed futures commission merchant.  He is a member of the executive committee charged with managing In re Lehman Brothers Holdings Securities and ERISA Litigation, multidistrict proceedings arising out of the collapse of Lehman Brothers Holdings, Inc., the largest bankruptcy in United States history.  Mr. Girard also serves as counsel to several public and private institutional investors in securities litigation matters both domestically and abroad, and he assists in the prosecution of several international arbitration proceedings on behalf of European clients.

Mr. Girard was appointed by the late Chief Justice Rehnquist to serve on the United States Judicial Conference Committee on Civil Rules in 2004, and reappointed by Chief Justice John Roberts to a second three year term on the Committee in 2007.  As a member of the Civil Rules Advisory Committee's Discovery Subcommittee, he participated in the Committee's drafting of amendments governing electronic discovery, summary judgment and expert discovery. He is a member of the American Law Institute. He serves on the Advisory Board of the Institute for the Advancement of the American Legal System, a national, non-partisan organization dedicated to improving the process and culture of the civil justice system.

Mr. Girard is the co-author of *Limiting Evasive Discovery: A Proposal for Three Cost- Saving Amendments to the Federal Rules*, 87 DENV. U. L. REV. 213, 473 (2010) and *Managez efficacement vos litiges d'affaires*, Extrait du magazine, Décideurs N°121, November 2010.  Other published articles include:   *Stop Judicial Bailouts*, The National Law Journal, December 1, 2008, and *Billions to Answer For*, Legal Times, September 15, 2008.    He is a frequent speaker on issues of electronic discovery, class actions and financial fraud, including the following presentations: *Recent Developments in U.S. Arbitration Law,* Conference on Business Law in Africa, Abidjan, Côte d'Ivoire, October 2012; *Bringing and Trying a Securities Class Action Case*, American Association for Justice 2012 Annual Convention, July 2012; Panel *on Class Actions,* U.S. Judicial Conference Standing Committee on Rules of Practice and Procedure, Phoenix, January 2012*; Panel on Paths to (Mass) Justice,* Conference on Globalization of Class Actions and Mass Litigation, The Hague, December 2011*; Contentieux et Arbitrage International: les bons réflexes à acquérir (Litigation and International Arbitration: acquiring the right reflexes)*, Paris, France, March 2011; *Panel on Proposals for Rule Amendments and Preservation Obligations*, United States Judicial Conference Advisory Committee on Rules of Practice and Procedure, San Francisco, January 2011; *Panel on Dispositive Motions*, 2010 United States Judicial Conference Advisory Committee on Civil Rules, Litigation Conference, Duke Law School, May, 2010; "*Iqbal/Twombly Fallout- Are General Federal Rules Passé?*," ABA, Section of Litigation Annual Conference, April 22, 2010; "*Opportunities for Cooperation between Plaintiffs' Counsel in Global Financial Frauds*," Financial Fraud- Background and Litigation Panel, Global Justice Forum, October 16, 2009; "*Les tendances des contentieux Américains issus de la crise financière*," Paris, France, May 12, 2009; "*Ethical Issues in E-Discovery*," Electronic Discovery and Records Retention Conference, Thomson Reuters,

2

December 10, 2008; "*How the Economic Crisis is Affecting U.S. Class Actions*," Asset Managers Working Group on U.S. Class Actions, Paris, France, October 14, 2008; "*Auction Rate Securities: The Real Story*," NERA's Eleventh Annual Finance, Law and Economics Securities Seminar, July 2008; "*Electronic Discovery and the Amended Rules After a Year...What's New? What's Next?*," Emerging Ethics Issues in E- Discovery, West LegalWorks, February 26, 2008; "*The Subprime Loan Crisis- Strategies for Pension Fund Counsel*," 2008 NAPPA Investment Roundtable, February 7, 2008; "*Class Action Litigation in the United States*," Presentation for Japanese Fact-Finding Mission on Class Actions in the United States, June 13, 2007.

Mr. Girard is a member of the Business Law Section of the American Bar Association and currently serves as the Section's representative on the Task Force on Federal Preemption. He is past Chair of the Business Law Section's Subcommittee on Class Actions, Co-Chair of the Business and Corporate Litigation Committee's Task Force on Litigation Reform and Rule Revision, and Vice-Chair of the Business and Corporate Litigation Committee. He has served as a guest lecturer on class actions and complex litigation at the UC Davis Law School, UC Berkeley (Boalt Hall), UC Hastings College of the Law, and Stanford Law School.

Mr. Girard was selected for inclusion in *The Best Lawyers in America* (2012-2013) for his work in class action and securities litigation. *Best Lawyers* also named him the 2013 "Lawyer of the Year" in San Francisco for Mass Tort Litigation / Class Actions - Plaintiffs. Mr. Girard has been consistently honored as a *Northern California Super Lawyer* (2007-2013), and has also earned the distinction of being included in the "Top 100 Super Lawyers" in Northern California. He has been named among the highest class of attorneys for professional ethics and legal skills with an *AV-Preeminent* rating by Martindale Hubbell, and was featured in the 2012 edition of San Francisco's Top *AV-Preeminent* Rated Lawyers.

He served as a member of the Board of Trustees of St. Matthew's Episcopal Day School in San Mateo, California from 2003-2008, including three years as board chair from 2005-2008. He served as a volunteer conservation easement monitor for the Peninsula Open Space Trust from 1991 to 2010.

He is a 1984 graduate of the School of Law, University of California at Davis, where he served as an editor of the Law Review. He received his undergraduate degree from Cornell University in 1979. Mr. Girard is a member of the California Bar.

**Eric H. Gibbs** specializes in the prosecution of consumer and employment class actions. Mr. Gibbs has served as court-appointed lead counsel, class counsel and liaison counsel in numerous class actions throughout the United States.

He has successfully prosecuted more than 75 class action matters, including cases involving defective products, telecommunications, credit cards, unfair competition, false advertising, truth-in-lending, product liability, credit repair, employment misclassification and wage and hour under both state and federal law. Some of the recent cases in which Mr. Gibbs served as court appointed class counsel and achieved favorable results for class members include Smith vs. The Regents of the University of California (negotiated a material change in UCSF's privacy practices on behalf of a certified class of current and former patients of the UCSF

3

medical center for unlawful disclosure of confidential medical information);  In Re: Pre-Filled Propane Tank Marketing and Sales Practices Litigation (negotiated cash reimbursements of up to $75 per class member for the purchase of allegedly under-filled propane tanks- Court approval pending), Browne et al. v. American Honda Motor Co., Inc., (negotiated class settlement providing for cash reimbursements of up to $150 for rear brake pad replacement expenses in certain Honda and Acura vehicles), Collado v. Toyota Motor Sales, U.S.A., Inc. (negotiated a class settlement providing for a free warranty extension and cash reimbursements for many Prius owners who paid for headlight repairs), In Re Mercedes-Benz Tele Aid Contract Litigation (negotiated a class settlement providing for cash reimbursements of $650, or new vehicle credits for up to $1,300), Parkinson v. Hyundai Motor America (achieved nationwide class certification and settlement providing for cash reimbursements for certain flywheel / clutch parts repairs in 2003 Hyundai Tiburons), Refuerzo v. Spansion LLC, (negotiated more than $8.5 million in cash settlements on behalf of a certified class of former employees in a class action for violations of the WARN Act), In Re General Motors Dex-Cool Cases (negotiated cash reimbursements from $50 to $800 per class member vehicle repair), Bacca v. BMW of North America (negotiated reimbursement for sub-frame repair expenses and Nationwide Sub-frame Inspection and Repair Program), and Piercy v. NetZero (achieved nationwide class settlement providing cash reimbursements, and changes in billing and account practices).  He conducted a two-week arbitration resulting in a liability and damages award on behalf of a certified class of current and former account representatives of Masco Retail Cabinet Group who alleged they were misclassified under the Fair Labor Standards Act.

Mr. Gibbs was appointed as interim class counsel on the Plaintiffs' Executive Committee in the In re Chase Bank U.S.A., N.A. "Check Loan" Contract Litigation, multi-district litigation alleging that Chase Bank wronged consumers by offering them long-term fixed-rate loans, and then attempting to deny them the benefit of their bargain by more-than-doubling their loan payments.  He led recent settlement negotiations in the case, which resulted in a $100 million settlement with Chase eight weeks prior to trial.  He serves as interim class counsel in Milano v. Interstate Battery System of America, Inc., representing purchasers of automobile batteries in a breach of warranty action.

Other significant consumer class actions in which Mr. Gibbs acted in a leadership role include Mitchell v. American Fair Credit Association and Mitchell v. Bankfirst, N.A., which generated one of the largest settlements in the United States under the credit services laws (over $40 million); Providian Credit Card Cases, which resulted in one of the largest class action recoveries in the United States arising out of consumer credit card litigation ($105 million); In Re Ipod Cases (achieved settlement in California state-court class action alleging material misrepresentations respect to the battery life providing for warranty extensions, battery replacements, cash payments, and store credits to those class members who experienced a battery failure), Roy v. Hyundai Motor America (negotiated nationwide class settlement providing for the repair of allegedly defective passenger-side airbags, reimbursement for transportation related expenses, and an alternative dispute resolution program allowing for trade-ins and buy-backs), Paul v. HCI Direct (achieved nationwide class certification and settlement on behalf of consumers charged for merchandise they allegedly did not knowingly order), Kim v. BMW of North America (negotiated nationwide class settlement providing for notification program and free vehicle repair related to passenger-side airbags), In re LookSmart Litigation, a nationwide class action settlement providing cash and benefits valued at approximately $20 million; and Fantauzzo v. Razor, where plaintiffs alleged that defendant marketed and sold electric scooters

4

with defective stopping mechanisms, the court approved a nationwide class action settlement providing for, among other things, a recall of the potentially defective electric scooters.

Mr. Gibbs has lectured on consumer class actions, including as a featured speaker addressing *Strategic Considerations Under CAFA following Supreme Court's Rulings in Shady Grove and Purdue* at the Bridgeport 9th Annual Class Action Litigation Conference; *Current Issues Arising in Attorney Fee Negotiations, Including Best Practices* at the 2010 AAJ Annual Convention; *Dealing With Objectors* at the Consumer Attorneys of California 3rd Annual Class Action Seminar; *What is a Class Action?* at the CAOC Annual Ski Seminar; *After the Class Action Fairness Act* at CAOC's 1st Annual Class Action Seminar; *Class Certification In Consumer Cases* for the Litigation Section of the Barristers Club of the San Francisco Bar Association; and *Successfully Obtaining Attorneys' Fees Under Fee-Shifting Statutes* for the Consumer Rights Section of the Barristers Club of the San Francisco Bar Association. Mr. Gibbs is the co-author of *Consumer Class Actions in the Wake of Daugherty v. American Honda Motor Company*, CAOC's Forum Magazine, January/February 2009.

Mr. Gibbs was recently selected by his peers for inclusion in *The Best Lawyers in America* (2012-2013) for his work in Mass Tort Litigation/ Class Actions, and was honored as a *Northern California Super Lawyer* (2010-2013). He also earned the additional distinction of being included among the "Top 100 Super Lawyers" in Northern California. With an *AV-Preeminent* rating from Martindale-Hubbell, Mr. Gibbs has been named among the highest class of attorneys for professional ethics and legal skills, and was featured in the 2012 edition of San Francisco's Top *AV-Preeminent Rated Lawyers*.

Mr. Gibbs is the co-chair and editor of the Quarterly Newsletter for the Class Action Litigation Group of the American Association for Justice (AAJ), and is a member of the Board of Governors of the Consumer Attorneys of California. He is a member of Public Justice, serving on the Class Action Preservation Project Committee. He is also a member of the American Bar Association, the National Association of Consumer Advocates, the Alameda County Bar Association, and the San Francisco Trial Lawyers Association.

Mr. Gibbs is a 1995 graduate of the Seattle University School of Law. He received his undergraduate degree from San Francisco State University in 1991. Before joining Girard Gibbs, he worked for two years as a law clerk for the Consumer Protection Division of the Washington Attorney General's Office. He is a member of the California Bar.

**A. J. De Bartolomeo** has more than twenty years of experience in complex litigation, including the prosecution and defense of class actions arising under the securities, communications, consumer protection and copyright laws. Her experience extends to the prosecution of pharmaceutical and medical device litigation as well as the collection of class action recoveries and claims administration in bankruptcy proceedings. She has served as court-appointed lead counsel and class counsel in several class actions throughout the United States.

Ms. De Bartolomeo served as Lead Counsel in Telstar v. MCI, Inc. (S.D.N.Y) (achieved settlement for over $2.8 million in cash on behalf of class of commercial subscribers alleging FCA violations), Lehman v. Blue Shield (Cal. Super. Ct. San Francisco County) (parties negotiated a settlement for over $6.5 million in cash on behalf of class of subscribers overpaying insurance premiums), Powers Law Offices v. Cable & Wireless, USA (D. Mass.) (Bankr. D.

Del.) (achieved settlement for over $2.2 million in cash after Chapter 7 filing on behalf of Rule 23(b)(3) certified class of commercial customers alleging FCA violations), and In re Cosmo Store Services, (Bankr. C.D. Cal.) (achieved settlement for $1 million in cash after Chapter 11 filing on behalf of class of unsecured creditor employees).  Ms. De Bartolomeo has also held a leadership position in In re American Express Advisors Securities Litigation (S.D.N.Y), CALSTRS v. Quest Communications, et al. (Cal. Super. Ct. San Francisco County), Cromwell v. Sprint Communications (D. Kan), and Brennan v. AT&T Corp. (S.D. Ill.).  Ms. De Bartolomeo served as second chair in In re MCI Non-Subscriber Rates Litigation (MDL, S.D. Ill.) ($88 million settlement).  From 2005 to 2008, A. J. De Bartolomeo served on the Discovery and Law Committees in the In Re Medtronic, Inc. Implantable Defibrillators Product Liability Litigation, MDL No. 05-1726 (JMR/AJB) (D.Minn.).

Ms. De Bartolomeo currently serves on the Plaintiffs' Steering Committee of the In Re: Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation. She was appointed to the Plaintiffs' Steering Committee in the Transvaginal Mesh Multi-District Litigation, responsible for overseeing the coordinated litigation for over 700 transvaginal mesh lawsuits.

Ms. De Bartolomeo has been named among the highest class of attorneys for professional ethics and legal skills with an AV-Preeminent rating by *Martindale Hubbel,* and was honored as a *Northern California Super Lawyer* (2013). She is a member of the American Bar Association Sections on Litigation, Business Law and Communications, the American Bankruptcy Institute, Consumer Attorneys of California and the American Association for Justice. She also is also a former member of the National Association of Public Pension Attorneys, where she was an active participant in the Task Force on Securities Litigation and Damage Calculation, as well as a member of the Council of Institutional Investors.

Ms. De Bartolomeo has been invited to speak on consumer and securities class actions, as well as the settlement approval process before defense law firms, institutional investors and government committees; most recently, for the Women's Leadership Summit at the AAJ Annual Convention and the Fact-finding Mission to Class Actions in the United States, sponsored by the Japan Federation of Bar Associations and Kyoto Bar Association.  She is the author of "*Facilitating the Class Action Approval Process,*" AAJ's Women Trial Lawyers Caucus Newsletter, summer 2010.

Ms. De Bartolomeo is a 1988 graduate of the University of California, Hastings College of the Law. She received her undergraduate degree from Fairfield University in 1982, and a General Course degree in Economics from the University of London, London School of Economics and Political Science (1981). Before joining Girard Gibbs, Ms. De Bartolomeo was an associate with Robins Kaplan Miller & Ciresi and a Staff Attorney with the Securities and Exchange Commission (Enforcement Division). She is admitted to the California Bar. She also is admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the First and Ninth Circuits, and the United States District Courts for the District of Michigan, the Southern District of Texas, the Eastern District of Wisconsin, and the Northern, Eastern, Central and Southern Districts of California.

**Jonathan K. Levine** has more than 25 years of experience prosecuting complex securities fraud, accounting fraud and class action litigation in state and federal courts. Some of

the cases in which Mr. Levine has served in a leadership role include: In re SLM Corp. Securities Litigation ($35 million settlement), In re American Express Financial Advisors Securities Litigation ($100 million settlement), Rosen v. Macromedia, Inc. ($48 million settlement), In re Gupta Corporation Securities Litigation ($15 million settlement), Provenz v. Miller ($15 million settlement), and Providian Credit Card Cases, ($105 million settlement).

Mr. Levine is also experienced in derivative litigation, having served as lead attorney in *Wixon v. Wyndham Resort Development Corporation,* a class and derivative action alleging that the directors of WorldMark violated their fiduciary duties by taking actions for the financial benefit of Wyndham, the timeshare developer, to the detriment of the timeshare owners. Mr. Levine led the firm's pre-trial preparation in *In re SLM Corp. Securities Litigation*, and is currently involved in the firm's representation of institutional investors in the In re Winstar Communications Securities Litigation and structured note holders in the *In re Lehman Brothers Equity/Debt Securities Litigation.*

Mr. Levine was honored as a *Northern California Super Lawyer* (2013). He is the author of "*E-Mail and Voice Mail Discovery Issues*," Glasser LegalWorks (1998), "*Discovery Techniques in Commercial Litigation and Recent Developments In the Rules of Discovery*," American Trial Lawyers Association (1991), and the co-author of "*The Business Judgment Rule and Derivative Actions*," Practicing Law Institute (1989). He has lectured on securities litigation under the Private Securities Litigation Reform Act of 1995, consumer fraud and predatory lending litigation, and computer discovery and electronic data retention risk control. More recently, he was the featured speaker addressing *Successful Direct Examination of Expert Witnesses* at the Bridgeport 2011 Conference on Working With and Deposing Experts (March 2011), and *Evaluating the Impact of the LIBOR Scandal* at the West LegalEdCenter (August 2012). Mr. Levine has served as an appointed member of the Committee on Federal Courts of the State Bar of California and as the past chair of the American Bar Association Litigation Section Subcommittee on Officers and Directors Liability. He also served for seven years on the Piedmont Planning Commission.

For nine years prior to joining Girard Gibbs, Mr. Levine was a partner of a New York law firm, where he specialized in securities fraud, accounting fraud and consumer class action litigation. Mr. Levine is a 1988 graduate of Fordham University School of Law. He received his undergraduate degree from Columbia University in 1985. Mr. Levine is a member of the California, New York and Connecticut Bars, and is admitted to practice in federal courts throughout the United States.

**Amanda Steiner** specializes in the prosecution of complex securities and consumer class actions. She helped achieve recoveries on behalf of class members in Billitteri v. Securities America, Inc., ($150 million settlement achieved on behalf Provident Royalties and Medical Capital investors). She is currently involved in the prosecution of In re SLM Corporation Securities Litigation, representing a certified class of investors in SLM common stock. She also participates in the firm's representation of structured note-holders in the In re Lehman Brothers Equity/Debt Securities Litigation.

Ms. Steiner was selected for inclusion in *Northern California Super Lawyers* in 2012 and 2013. She is a 1997 graduate of the University of California at Berkeley, Boalt Hall School of Law, where she served as an Associate Editor for the *Berkeley Journal of Employment and*

*Labor Law* (1995-96) and Articles Editor for the *Berkeley Women's Law Journal* (1994-97). She received her undergraduate degree, *cum laude,* from Carleton College in 1991.  Prior to joining Girard Gibbs, Ms. Steiner handled a variety of complex litigation matters, including cases involving defective products, employment, real estate development, construction issues, commercial and real estate contracts, mortgages and trust deeds, and lender-related disputes.

Prior to obtaining her law degree, Ms. Steiner served as an extern for U.S. District Court Judge Marilyn Hall Patel, and also worked as a law clerk for the Criminal Division of the U.S. Attorney's Office, the Alameda County District Attorney, and the Hopi Appellate Court Clinic and Tribal Law Project.  She is admitted to the California, New York and Washington Bars.  She is also admitted to practice before the United States Court of Appeals for the Ninth Circuit as well as the United States District Court for the Northern District of California and the Western and Eastern District of Washington.

**Dylan Hughes** specializes in the prosecution of consumer and employment class actions. He represents consumers in cases involving defective products, telecommunications, credit cards, product liability, credit repair, employment misclassification and wage and hour under state and federal laws. Mr. Hughes has extensive experience prosecuting complex automobile-defect cases and helped achieve recoveries on behalf of class members in the In Re General Motors Dex-Cool Cases (settlement of $50 to $800 cash reimbursements per class member vehicle repair) and In Re General Motors Cases, a certified California state court class action against General Motors alleging violations of California's "Secret Warranty" law, California Civil Code § 1794.90 et seq. Mr. Hughes is currently involved in the Parkinson v. Hyundai Motor America lawsuit, a class action against Hyundai for engaging in unfair and deceptive practices by selling vehicles with defective flywheel systems, recently granted class certification.

Mr. Hughes was selected for inclusion in *Northern California Super Lawyers* in 2012 and 2013.  He is a 2000 graduate of the University of California, Hastings College of Law. He received his undergraduate degree from the University of California at Berkeley in 1995. Mr. Hughes was a spring 2000 extern for the Honorable Charles A. Legge of the United States District Court, Northern District of California.

Before joining Girard Gibbs, Mr. Hughes was a law clerk for the Honorable Paul A. Mapes, Administrative Law Judge of the Office of Administrative Law Judges, United States Department of Labor. He is a member of the American Bar Association, Consumer Attorneys of California, the Class Action Litigation Group of the American Association for Justice and the Consumer Rights Section of the Barristers Club. He is admitted to the California Bar and is admitted to practice before the United States Court of Appeals for the Ninth Circuit as well as the United States District Courts for the Northern and Central Districts of California.

**John Kehoe** is a partner in the firm's New York office specializing in the prosecution of securities and financial fraud cases on behalf of institutional clients and individual investors.

Mr. Kehoe has served as court-appointed lead counsel or co-counsel in numerous securities and antitrust class actions in state and federal courts throughout the United States, including: In re Bank of America Corporation Securities Litigation ($2.425 billion class settlement); In re Vitamins Antitrust Litigation ($2.2 billion in federal and state class and direct action settlements); In re Wachovia Preferred Securities and Bond/Notes Litigation ($627

million class settlement); In re Initial Public Offering Securities Litigation ($586 million class settlement resolving 309 consolidated actions); In re Lehman Brothers Securities and ERISA Litigation ($516 million class settlement); Ohio Public Employees Retirement System et al. v. Freddie Mac ($410 million class settlement); In re Bristol Myers Squibb Securities Litigation ($300 million class settlement); Smajlaj v. Brocade Communications Systems ($160 million class settlement); and In re Marvell Technology Group Ltd. Securities Litigation ($72 million class settlement).

Prior to joining Girard Gibbs, Mr. Kehoe was a partner with Kessler Topaz Meltzer & Check, LLP representing institutional investors in securities class actions and direct actions, and was previously associated with Clifford Chance LLP, a London-based global law firm where he represented Fortune 500 companies in securities and antitrust civil litigation, and in enforcement actions brought by the Department of Justice, the U.S. Securities and Exchange Commission, and the Federal Trade Commission.  Prior to receiving his law degree, Mr. Kehoe served as a police officer in the State of Vermont, and was a member of the Special Reaction Team, the Major Accident Investigation Team, and received advanced police instruction from the Florida Institute of Police Technology and Management.

Mr. Kehoe is a program faculty member with the National Institute of Trial Advocacy, and serves as an adjunct faculty member with the Trial Advocacy Training Program at the Louisiana State University School of Law.  He also presents on issues involving securities litigation at conferences, such as the Rights and Responsibilities for Institutional Investors (Amsterdam, Netherlands); the European Pensions Symposium (Marbella, Spain); the Public Funds Symposium (Washington, D.C.); National Conference on Public Employee Retirement Systems (Miami, FL); Investment Education Symposium (New Orleans, LA); Public Finds West Summit (Scottsdale, AZ); and the Pennsylvania Public Employees Retirement Summit (Harrisburg, PA).

Mr. Kehoe is a 1997 graduate, magna cum laude, of Syracuse University College of Law, where he served as an Associate Editor of the Syracuse Law Review, Associate Member of the Syracuse Moot Court Board, and Alternate Member on the National Appellate Team.  Mr. Kehoe received his Masters of Public Administration from the University of Vermont and his undergraduate degree from DePaul University.  He is a member of the New York and Pennsylvania Bars, and is admitted to practice before the Court of Appeals for the Second and Eleventh Circuits, as well as the U.S. District Court for the Southern District of New York.

**Geoffrey Munroe** is a partner at Girard Gibbs representing plaintiffs in high-profile class action and mass tort cases in both federal and state courts throughout the United States. He was selected as a Rising Star by Northern California Super Lawyers (2010-2013), recognizing him as one of the best young attorneys practicing in Northern California. He is the co-author of "Consumer Class Actions in the Wake of Daugherty v. American Honda Motor Company," CAOC's Forum Magazine, January/February 2009, and a frequent contributor to the Class Action Litigation Group Newsletter of the American Association for Justice.

Mr. Munroe is a 2003 graduate of the University of California at Berkeley, Boalt Hall School of Law, where he was the recipient of the American Jurisprudence Award in Torts, Business Law & Policy and Computer Law. He received his undergraduate degree in chemistry from the University of California at Berkeley in 2000. Mr. Munroe is a member of the Public

Justice Class Action Preservation Project Committee, the Class Action Litigation Group of the American Association for Justice and the Consumer Attorneys of California. He is a member of the California Bar and is admitted to practice before the United States Court of Appeals for the Ninth Circuit, as well as the United States District Courts for the Northern, Central and Southern Districts of California.

**Dena Sharp** is a partner at Girard Gibbs LLP who has dedicated her practice to representing plaintiffs in complex litigation throughout the United States. She specializes in the day-to-day case management of multifaceted, high-profile cases, and has developed expertise directing complex electronic discovery projects in lawsuits including In re Lehman Brothers Holdings Securities and ERISA Litigation, In re SLM Corporation Securities Litigation, Billitteri v. Securities America, Inc., In re Oppenheimer Rochester Funds Group Securities Litigation, and In re Nexium Antitrust Litigation.

Ms. Sharp is an active member of The Sedona Conference Working Group on Electronic Document Retention and Production, the leading think tank on e-discovery. She has contributed to federal rule making process by assisting in drafting proposed revisions to the Federal Rules of Civil Procedure that have been presented to the United States Judicial Conference Advisory Committee on Civil Rules. Ms. Sharp is also a member of the American Bar Association, where she has served as Vice-Chair of the Young Lawyer's Division Litigation Committee, and the Federal Bar Association.

Ms. Sharp has been selected every year since 2009 as a Rising Star by Northern California Super Lawyers, recognizing her as one of the best young attorneys practicing in Northern California. She speaks frequently on discovery issues around the country and has served on the faculty of The Sedona Conference Institute, a continuing legal education program featuring federal and state court judges, seasoned litigators, and in-house counsel. She is the co-author of "Four Views of Consumer Fraud," CAOC's Forum Magazine, May/June 2012, among other articles.

Ms. Sharp is a 2006 graduate, cum laude, of the University of California, Hastings College of Law, where she was a member of the Thurston Society and was the recipient of the Best Oral Advocate Award. She was also the recipient of the Witkin award in her Legal Writing and Criminal Law courses. She received her undergraduate degree in history, magna cum laude, from Brown University in 1997. Ms. Sharp was a summer 2005 extern for the Honorable Phyllis J. Hamilton of the United States District Court, Northern District of California. Ms. Sharp also served as a spring 2005 extern for the Honorable John E. Munter, San Francisco Superior Court. She is fluent in Spanish and German, and is admitted to the California Bar. She is also admitted to practice before the United States District Courts for the Northern, Central, Eastern and Southern Districts of California.

### ASSOCIATES

**Matthew Boyle** is an associate with the firm and 2009 graduate of the University of Pacific, McGeorge School of Law, where he was a member of the Pacific McGeorge Global Business & Development Law Journal. He was a recipient of the Witkin Award for Legal Research Writing and graduated with a tax law concentration. Mr. Boyle received his

undergraduate degree in English Literature from the University of California, Berkeley in 2002. He is admitted to the California Bar.

**Matias Bustamante** is a 2011 graduate of the University of Southern California Gould School of Law. He graduated in 2008 from California State University, Fresno with a B.A. in Philosophy and a minor in Economics. Before joining Girard Gibbs, he was a summer law clerk with Oakland's Office of the City Attorney, a law clerk with a personal injury firm in Los Angeles, and an attorney specializing in document review with various firms in the San Francisco Bay Area. Mr. Bustamante is admitted to the California bar.

**Tucker Cottingham** is a 2011 graduate of the University of San Francisco School of Law, where he served on the Executive Board of the *Intellectual Property Law Bulletin* and founded the USF Clean Technology and the Law Symposium.  He received his undergraduate degree in classics from Kenyon College in 2007.  Mr. Cottingham was a 2010 certified law clerk for the U.S. Attorney's Office, and a Judicial Law Clerk for the California Public Utilities Commission.  He is admitted to the California Bar.

**Matthew B. George** is a 2005 graduate of the University of Michigan Law School. He received his undergraduate degree, *magna cum laude*, from Chapman University in 2002, where he was a Presidential Scholar. He was a featured speaker addressing *Class Action Settlement Strategies and Mechanics* at the 12th Annual Bridgeport Class Action Litigation & Management Conference (April 2012), and *Developments in the Arbitration of Wage and Hour Disputes* at the Bridgeport 2010 Wage and Hour Conference (October 2010).

He was selected as a Rising Star by Northern California Super Lawyers (2011-2013), recognizing him as one of the best young attorneys practicing in Northern California.  He is a member of the American Bar Association – Section of Labor and Employment Law and Young Lawyers Division, Consumer Attorneys of California, and BALIF. Before joining Girard Gibbs, Mr. George represented employees in complex labor and employment actions in both federal and California state courts. Mr. George is admitted to the California Bar, as well as the United States District Court for the Northern, Central, and Eastern Districts of California and the District of Colorado.

**Heidi Kalscheur** is a 2012 graduate of the University of California, Hastings College of the Law where she was a member of the Moot Court Board and the Hastings Appellate Project. She was also a Senior Editor of the Hastings Constitutional Law Quarterly and authored 'About "Face": Using Moral Rights to Increase Copyright Enforcement in China' 39 Hastings Const. L.Q. 513 (2012). While at Hastings, she was part of a national championship moot court team and a member of Law Students for Reproductive Justice. Heidi received her Master's degree in Art History from the Courtauld Institute of Art, London, and her undergraduate degree in Art History from the University of Wisconsin. She was a summer extern for the Honorable Carla Woehrle of the United States District Court in Los Angeles. Heidi is admitted to the California Bar.

**Phyra McCandless** is a graduate of the University of San Francisco School of Law where she was a member of Law Review and was selected to deliver her class commencement speech. As part of Law Review, she wrote and published The Fallacy of Mandating Contraceptive Equity: Why Laws That Protect Women with Health Insurance Deepen

11

Institutional Discrimination, 42 U.S.F. L. Rev. 1115 (2008)." She received her undergraduate degree in psychology from Harvard College and earned a Master of Public Health from the Johns Hopkins Bloomberg School of Public Health.

Prior to joining Girard Gibbs, Ms. McCandless represented plaintiffs in asbestos and tobacco litigation at Brayton Purcell LLP. Previously, she was a postdoctoral fellow with the Center for Tobacco Control Research and Education at the University of California, San Francisco where she researched and co-authored "Quid Pro Quo: Tobacco Companies and the Black Press" in the American Journal of Public Health, as well as co-authored commissioned white papers on menthol for the Food and Drug Administration. Ms. McCandless has also served as an Equal Justice Works AmeriCorps Legal Fellow, coordinating the local law student pro bono project at the Public Interest Clearinghouse (now OneJustice). She is a member of the American Public Health Association, the Consumer Attorneys of California, the San Francisco Bar Association, and holds leadership positions in the American Bar Association Tort Trial and Insurance Practice Section. Ms. McCandless is admitted to practice in California State Court, the Northern District of California, and the Ninth Circuit Court of Appeals.

**Rachel Naor** is a 2012 graduate of the UCLA School of Law, where she served as a Managing Editor of the UCLA Law Review and as a research assistant for Professor Clyde Spillenger. She was a summer extern for the Honorable Gary A. Feess of the United States District Court for the Central District of California.  Ms. Naor received her undergraduate degree in History with a minor in Spanish from UC Berkeley in 2007. Ms. Naor is admitted to the California Bar.

**Adam Polk** is a 2010 graduate of the University of California, Hastings College of the Law. While at Hastings, Mr. Polk externed for Judges Sandra Brown Armstrong and Claudia Wilken, Article III judges for the Northern District of California. Mr. Polk was also active in moot court, chairing the team and winning multiple awards for both oral and written advocacy. Adam received his undergraduate degree in English and Philosophy from UCLA.

Prior to joining Girard Gibbs, Adam spent three years at the McNamara law firm, one of the largest firms in the east bay, where he defended and prosecuted a wide variety of civil litigation matters ranging from catastrophic injury and wrongful death to commercial liability. Mr. Polk has extensive (100+) deposition, law and motion, ADR and trial experience. In 2013, Mr. Polk was selected by his peers as a Rising Star by Northern California Super Lawyers.

**Scott Grzenczyk** is a 2011 graduate of the University of California, Davis, School of Law, where he was the Chair of the Moot Court Board and the Executive Editor of the UC Davis Journal of International Law and Policy.  He was the recipient of the Witkin Award for Legal Research and Writing, Best Brief and Best Advocate awards in his moot court class, and numerous awards at national moot court competitions. He was also a member of the Law School's national mock trial team and the law school faculty named him as a member of the Order of the Barristers. Scott received his undergraduate degree in political science and certificate in political theory from Princeton University in 2006. Scott has appeared before the Ninth Circuit Court of Appeals and the Federal District Court for the Eastern District of California. He was selected as a Rising Star by Northern California Super Lawyers (2013), recognizing him as one of the best young attorneys practicing in Northern California.

**Andrew Simmons** is an associate with the firm and a 2011 graduate of the University of San Francisco School of Law. Andrew was a member of the Maritime Law Journal, where he served as the Executive Articles Editor, and twice competed on the Judge John R. Brown Admiralty Moot Court Competition. He received his Bachelor of Science in Logistics and Supply Chain Management from Iowa State University in 2006. Mr. Simmons has served on the BASF Pacific Admiralty Seminar Steering Committee since 2010 and is currently the Vice-Chair for the Barristers Sports and Entertainment Section. He is admitted to the California Bar.

**David Stein** is a 2007 graduate of the Emory University School of Law, where he was the Executive Notes & Comments Editor for the *Emory Bankruptcy Developments Journal* and authored *Wrong Problem, Wrong Solution: How Congress Failed the American Consumer*, 23 Emory Bankr. Dev. J. 619 (2007). He received his undergraduate degree in philosophy from the University of California at Santa Barbara in 2003. Before joining Girard Gibbs, Mr. Stein was served as judicial law clerk to the Honorable Keith Starrett, United States District Court for the Southern District of Mississippi and to Magistrate Judge Karen L. Hayes, United States District Court for the Western District of Louisiana. Mr. Stein is admitted to the California Bar. He was selected as a Rising Star by Northern California Super Lawyers (2013), recognizing him as one of the best young attorneys practicing in Northern California.

**Jonathan Taylor** is a 2011 graduate of the University of San Francisco School of Law and an associate with the firm. While at USF, Jonathan focused heavily on intellectual property, specifically copyright and trademark. Jonathan was a member of the participated in the IP Law Clinic, served on IP Law Blog in a number of roles, and graduated with the IP & Technology Law Certificate. Prior to joining Girard Gibbs Jonathan worked in Mississippi with a local anti-trust and class action attorney. In addition, Jonathan spearheaded a project for the Mississippi Innocence Project, creating a practice guide manual for defense attorneys' in Mississippi. Jonathan received his undergrad degree from the University of California, Santa Cruz in 2006. He has extensive background in finance and securities, having worked both prior to and during law school in wealth management and investing where he held Series 7 and Series 66 securities licenses.

**Lesley Tepper** is a 2010 graduate of the University of San Francisco School of Law, where she was a member of the Investor Justice Clinic, assisting investors in legal actions involving allegations of wrongdoing by securities firms. She received her undergraduate degree in International Relations with a minor in Peace and Conflict Studies from the University of Southern California in 2007. Ms. Tepper was a spring 2010 extern for the Honorable William Alsup of the United States District Court, Northern District of California. Prior to joining Girard Gibbs, Ms. Vittetoe represented investors in securities arbitration and other dispute resolution proceedings before the Financial Industry Regulatory Authority (FINRA) against brokers and brokerage firms. She is a member of the California Bar.

**Ashley Tveit** is a 2010 graduate of the University of San Francisco School of Law, where she was a member of the Investor Justice Clinic and served as a summer law clerk to the California Attorney General's Civil Antitrust division. She earned a graduate degree in international relations from Humboldt University in Berlin, Germany, and an undergraduate degree in Political Science and History from the University of California, Santa Barbara. She has previously worked for Senator Dianne Feinstein and provides pro bono services through the San Francisco Volunteer Legal Services Program. Ms. Tveit is admitted to the California bar.

**Linh Vuong** is a 2012 graduate of the University of San Francisco, School of Law, where she served as Executive Editor of the USF Law Review and a member of the Internet and Intellectual Property Justice Clinic.  She was the recipient of the CALI Award for Excellence in her Legal Ethics course, Best Oral Argument award in her moot court class, and the Intellectual Property & Technology Law Certificate with honors.  Ms. Vuong was also a spring 2012 extern and post-bar volunteer law clerk for the Honorable Saundra Brown Armstrong of the United States District Court, Northern District of California in Oakland.  She received her undergraduate degree in psychology and Asian American Studies from UCLA in 2006 and was on the Winter 2004 and Winter 2006 Dean's Honor List.  Ms. Vuong is admitted to the California Bar.

**Amy Zeman** is a 2010 graduate, *magna cum laude*, of the University of California, Hastings College of Law, where she was a member of the Thurston Society and served on the Hastings Law Journal. She received her undergraduate degrees in German and Art History and Archaeology, *summa cum laude*, from the University of Missouri in 1998. Ms. Zeman was a spring 2010 extern for the Honorable Marilyn Hall Patel of the United States District Court, Northern District of California. She was selected as a Rising Star by Northern California Super Lawyers (2013), recognizing him as one of the best young attorneys practicing in Northern California. Ms. Zeman is admitted to the California Bar.

## OF COUNSEL

**Michael S. Danko** is a renowned trial lawyer with more than 25 years of legal experience.  He represents individuals who have suffered catastrophic personal injuries, as well as families of wrongful death victims in cases involving product defects, defective medications and medical devices, airplane and helicopter accidents, and dangerous structures.  He has tried cases in state and federal courts throughout the country, and has won numerous eight-figure verdicts on behalf of his clients.

Mr. Danko represents dozens of victims of a Pacific Gas & Electric gas explosion and serves on the Plaintiffs' Steering Committee in a California state coordinated proceeding San Bruno Fire Cases, JCCP No. 4648.  He also serves on the Science Committee for Plaintiffs in In Re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation, MDL No. 2100.

In 2009, he won a $15 million jury verdict for a client injured by a defective aircraft part, which has earned him a nomination for 2009 California Trial Lawyer of the Year by the Consumer Attorneys of California.

Mr. Danko's trial advocacy has helped bring about significant reforms and changes to corporate policies as well.  As lead counsel in In Re Deep Vein Thrombosis Litigation, MDL No. 04-1606 (N.D. Cal.) he represented more than one hundred air travelers who had suffered strokes, pulmonary emboli, or heart attacks as a result of airline-induced blood clots.  He developed theories of liability and proof regarding the cause of his clients' injuries that lead to virtually every major air carrier warning air travelers about the risks of deep vein thrombosis and the steps that can be taken to mitigate those risks. Mr. Danko also represented parents of children who were injured or killed by a popular candy made by a foreign manufacturer. His work in proving that the candy's unusual ingredients and consistency made it a choking hazard resulted

in the candy being removed from Costco and Albertson's stores nationwide, and helped lead the FDA to ban the candy from further import into the United States.

He has been named a *Northern California Super Lawyer* each year since the award's inception in 2004. He is a *Lawdragon 500* finalist. In 2010, he was named one of the *Best Lawyers in America.* He is a member of the American Association for Justice, the Lawyer Pilots Bar Association and the Consumer Attorneys of California, where he serves on the board of governors. Mr. Danko received his AB degree from Dartmouth College, magna cum laude in 1980 and earned his JD from the University of Virginia School of Law in 1983.

**Kristine Keala Meredith** is a trial attorney specializing in product liability litigation.

She served as co-lead counsel with Mr. Danko representing more than one hundred air travelers who had suffered strokes, pulmonary emboli, or heart attacks as a result of airline-induced blood clots in *In Re Deep Vein Thrombosis Litigation*, MDL No. 1606.

Ms. Meredith served on the Law and Motion committee in *In Re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* MDL No. 2100, where she assisted in the successful opposition to 15 *Daubert* motions in fewer than three weeks.

Before devoting her practice to representing plaintiffs, Ms. Meredith worked on the national defense counsel teams for medical device manufacturers in multi-district litigation including, *In re Silicone Gel Breast Implants Product Liability Litigation* MDL No. 926; and, *In re Orthopedic Bone Screw Product Liability Litigation* MDL No. 1014. She also represented doctors and hospitals in defense of medical malpractice actions, where she worked with some of the world's leading medical experts.

In 2010, Ms. Meredith was named a *Northern California Super Lawyer*. She is currently an officer of the American Association for Justice and the San Mateo County Trial Lawyers Association. She is also a member of the San Francisco Trial Lawyers Association and the Consumer Attorneys of California. She is a former chair of the Minority Issues Committee of the San Francisco Bar Association Barrister Club.

She obtained her B.S. with honors from the University of California at Davis and was awarded a scholarship to attend Brigham Young University's J. Reuben Clark Law School. While in law school, she was awarded the Distinguished Student Service Award and spent a semester at Howard University Law School in Washington, D.C., as a member of the faculty/student diversity exchange.

## SIGNIFICANT RECOVERIES

Some of the cases in which the firm has had a leadership role are described below:

*In Re Chase Bank USA, N.A. "Check Loan" Contract Litigation*, Case No. 09-2032 (N.D. Calif., 2009). Girard Gibbs served on the plaintiffs' executive committee in this nationwide class action lawsuit brought against Chase Bank USA, N.A. after the credit card issuer more than doubled minimum monthly payments and imposed an "Account Service Charge" on customers who had accepted its fixed-rate balance transfer offers. On November 19,

2012, U.S. District Judge Maxine M. Chesney granted final approval of a $100 million settlement with JPMorgan Chase & Co on behalf of Chase cardholders.

*In re SLM Corp. Securities Litigation,* Case No. 08-Civ-1029 (WHP). Girard Gibbs served as lead counsel representing investors of SLM Corporation ("Sallie Mae") in litigation alleging that Sallie Mae, the leading provider of student loans in the U.S., misled the public about its financial performance in order to inflate the company's stock price. After achieving nationwide class certification, Girard Gibbs negotiated a settlement that established a $35 million fund to resolve investors' claims.

*Wixon v. Wyndham Resort Development Corp.*, Case No. C-07-02361 JSW (BZ), (N.D. Cal. 2007). Girard Gibbs served as class and derivative counsel in this litigation brought against a timeshare developer and the directors of a timeshare corporation for violations of California state law. Plaintiffs alleged that the defendants violated their fiduciary duties as directors by taking actions for the financial benefit of the timeshare developer to the detriment of the owners of timeshare interests. On September 14, 2010, Judge White granted approval of a settlement of the plaintiffs' derivative claims.

*Berrien, et al. v. New Raintree Resorts, LLC, et al.,* Case No. CV-10-03125 CW (N.D. Cal.). Girard Gibbs filed this class action on behalf of timeshare owners, challenging the imposition of unauthorized Special Assignment fees. On November 15, 2011, the Parties in the lawsuit reached a proposed settlement of the claims asserted by the Plaintiffs on behalf of all class members who were charged the Special Assessment. On March 13, 2012, the Court issued its Final Class Action Settlement Approval Order and Judgment, approving the proposed settlement.

*Browne v. Am. Honda Motor Co., Inc.,* Case No. CV 09-06750 (C.D. Cal.). In this class action in which Girard Gibbs and co-counsel served as class counsel, plaintiffs alleged that about 750,000 Honda Accord and Acura TSX vehicles were sold with a defective braking system, causing the rear brake pads to wear prematurely. Girard Gibbs negotiated a settlement in which improved brake pads were made available and class members who had them installed could be reimbursed in full, up to $150. The settlement also provided reimbursements to those who replaced their brake pads before the new pads became available. The settlement received final court approval in July 2010.

*Sugarman v. Ducati North America, Inc.* Case No. 5:10-cv-05246-JF (N.D. Cal.). Girard Gibbs served as class counsel on behalf of a nationwide class of Ducati motorcycle owners. Plaintiffs alleged that the plastic fuel tanks on certain Ducati motorcycles were defective because they degraded and deformed due to an incompatibility with the motorcycles' fuel. On January 12, 2012, the Court fully approved a settlement that provided an extended warranty and repairs for fuel tank expansion issues, and improved parts on behalf of a class of 39,000 owners of 2003-2011 Ducati motorcycles with plastic fuel tanks.

*Collado v. Toyota Motor Sales, U.S.A., Inc.,* Case No. 2:10-cv-3113-R (C.D. Cal.). Girard Gibbs served as lead counsel in this product liability class action alleging a material defect in the HID Headlight System in certain Prius models. The class settlement provided for a free warranty extension and cash reimbursements for many class members who paid for headlight repairs.

*Parkinson v. Hyundai Motor America,* Case No. CV 8:06-0345 (C.D. Cal.). Girard Gibbs served as class counsel in this class action featuring allegations that the flywheel and clutch system in certain 2003 Hyundai Tiburons were defective. The complaint alleged that though Hyundai knew of the defect it sold the vehicles without telling its customers about the problem and did not cover the repairs under warranty. After achieving nationwide class certification, Girard Gibbs negotiated a settlement that provided for reimbursements to class members for their repairs ranging, depending on mileage at time of repair, from 50% to 100% reimbursement. The settlement also provided full reimbursement for rental vehicle expenses for class those members who incurred them while flywheel or clutch repairs were being performed.

*In re Sony BMG CD Technologies Litigation*, Case No.1:05-cv-09575-NRB (S.D.N.Y.). Girard Gibbs served as co-lead counsel in this class action for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* on behalf of millions of consumers who purchased SONY BMG music compact discs encoded with digital rights management ("DRM") software which limited CD functionality and acted as spyware on the users' computers. The Hon. Naomi Reice Buchwald granted approval to a settlement that provided for a nationwide recall of certain CDs, the dissemination of software utilities to remove the offending DRM, cash and other compensation for consumers, and injunctive relief governing SONY BMG's use of DRM.

*In re iPod Cases*, JCCP No. 4355 (Cal. Super. Ct. San Mateo County). Girard Gibbs, as court appointed co-lead counsel, negotiated a settlement conservatively valued at approximately $15 million which provided warranty extensions, battery replacements, cash payments, and store credits for those class members who experienced a battery failure. In granting final approval of the settlement, the Hon. Beth L. Freeman said that the class was represented by "extremely well qualified" counsel who negotiated a "significant and substantial benefit" for the class members.

*In re PayPal Litigation*, Case No. C-02-1227-JF (PVT) (N.D.Cal., S.J. Div. 2002). Girard Gibbs served as co-lead counsel in this nationwide class action brought against PayPal alleging violations of the Electronic Funds Transfer Act ("EFTA") and California consumer protection statutes. The plaintiffs alleged that PayPal did not comply with the EFTA when restricting access to consumers' PayPal accounts, initiating certain electronic funds transfers or its error resolution processes. On September 24, 2004, Judge Fogel granted final approval to a settlement valued at $14.35 million in cash and returned funds, plus injunctive relief to ensure compliance with the EFTA.

*In re America Online, Inc. Version 5.0 Software Litigation*, MDL Docket No. 1341 (S.D. Fla.). Girard Gibbs served as co-lead counsel in this MDL proceeding, which centralized 45 class actions. The action involved alleged violations of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 et seq., federal antitrust laws and state consumer protection statutes based on AOL's distribution of its Version 5.0 software upgrade. The Honorable Alan S. Gold granted final approval to a $15.5 million cash settlement on August 1, 2002.

*In Re General Motors Dex-Cool Cases.* Case No. HG03093843 (Cal. Super Ct. Alameda County). In these class action lawsuits filed throughout the country, plaintiffs alleged that General Motors' Dex-Cool engine coolant caused damage to certain vehicles' engines, and that in certain other vehicles, Dex-Cool formed a rusty sludge, which caused the vehicles' cooling systems to overheat. After successfully certifying consumer classes in both Missouri and California, General Motors agreed to pay cash reimbursements to class members ranging from

$50 to $800 per vehicle.  On October 27, 2008 the California court granted final approval to the cash settlement.

*In re Providian Credit Card Cases*, J.C.C.P. No. 4085 (Cal. Super. Ct. San Francisco County).  Girard Gibbs served as court-appointed co-lead counsel in this nationwide class action suit brought on behalf of Providian credit card holders.  The lawsuit alleged that Providian engaged in unlawful, unfair and fraudulent business practices by charging its customers unauthorized fees and charges.  The Hon. Stuart Pollack approved a $105 million settlement, plus injunctive relief, which is one of the largest class action recoveries in the United States arising out of consumer credit card litigation.

*In re Hyundai and Kia Horsepower Litigation*, Case No. 02CC00287 (Cal. Super. Ct. Orange County).  Girard Gibbs served as lead counsel in this coordinated nationwide class action against Hyundai for selling more than 1 million vehicles with overstated horsepower ratings over a ten year period.  The case was aggressively litigated on both sides over several years.  In all, over 850,000 Hyundai owners received notice of the settlement, resulting in over 165,000 claims for up to $225 in cash and $325 in services, and a total payout of approximately $30 million.

*In re America Online Spin-Off Accounts Litigation*, MDL No. 04-1581-RSWL (C.D. Cal.).  Girard Gibbs served as court-appointed co-lead counsel in this nationwide class action suit brought on behalf of America Online subscribers who were billed for a second account without their knowledge, authorization or consent.  The litigation settled for $25 million and certain changes in AOL's billing and account practices.

*Lehman v. Blue Shield of California*, Case No. CGC-03-419349 (Cal. Super. Ct. San Francisco County). In this class action lawsuit alleging that Blue Shield engaged in unlawful, unfair and fraudulent business practices when it modified the risk tier structure of its individual and family health care plans, a $6.5 million settlement was negotiated on behalf of former and current Blue Shield subscribers residing in California.  The Honorable James L. Warren granted final approval of the settlement in March 2006.

*Roy v. Hyundai Motor America*, Case No. SACV 05-483-AHS (C.D. Cal.).  Girard Gibbs served as court appointed co-lead counsel in this nationwide class action suit brought on behalf of Hyundai Elantra owners and lessees, based on allegations that the passenger air bag system installed on the Elantras was defective.  A settlement was negotiated whereby Hyundai agreed to repair the air bag systems, provide reimbursement for transportation related expenses and an alternative dispute resolution program allowing for trade-ins and buy-backs.  In approving the settlement negotiated by Girard Gibbs, the Honorable Alicemarie H. Stotler presiding, described the settlement as "pragmatic" and a "win-win" for all involved.

*Telestar v. MCI, Inc.*, Case No. C-05-Civ-10672-JGK (S.D.N.Y). This class action was brought on behalf of MCI commercial subscribers who were charged both interstate and intrastate fees for the same frame relay on prorate line service during the same billing period.  On April 17, 2008, the Honorable John G. Koeltl granted final approval of a settlement for over $2.8 million in cash.

*Powers Law Offices, P.C. v. Cable & Wireless USA, Inc.*, Case No. 99 CV 12007 (EFH) (D. Mass 1999).  Class action brought on behalf of all Cable & Wireless subscribers who were

overcharged for recurring and incorrect fees on lines that were not presubscribed to C&W at the time.  Girard Gibbs prosecuted the case from 1999 through 2005, and on October 27, 2005, Judge Harrington granted final approval of the $8 million settlement and the Bankruptcy Judge approved the 30% distribution from the unsecured creditors' fund of the bankruptcy liquidation proceeds.

*Allen Lund Co., Inc. v. AT&T Corp.,* Case No. C 98-1500-DDP (AJW) (C.D. Cal.). This class action lawsuit was brought on behalf of small businesses whose long-distance service was switched to Business Discount Plan, Inc. Girard Gibbs was appointed class counsel by the Honorable Dean D. Pregerson.  The settlement, providing for full cash refunds and free long-distance telephone service, was approved in December 1999.

*In re MCI Non-Subscriber Telephone Rates Litigation*, MDL Docket No. 1275 (S.D. Ill.).  This class action lawsuit was brought on behalf of all MCI subscribers who were charged MCI's non-subscriber or "casual caller" rates and surcharges instead of the lower rates which MCI advertises and which subscribers expect to be charged.  Ten cases were consolidated for pretrial proceedings before the Honorable David R. Herndon, U.S. District Judge for the Southern District of Illinois.  Judge Herndon appointed Girard Gibbs as co-lead counsel for the consolidated actions.  On March 29, 2001, Judge Herndon granted final approval of a settlement for over $90 million in cash.

*Mitchell v. American Fair Credit Association*, Case No. 785811-2 (Cal. Super. Ct. Alameda County); *Mitchell v. Bankfirst, N.A.*, Case No. C-97-1421-MMC (N.D. Cal.).  This class action lawsuit was brought on behalf of California residents who became members of the American Fair Credit Association ("AFCA").  Plaintiffs alleged that AFCA operated an illegal credit repair scheme.  The Honorable James Richman certified the class and appointed the firm as class counsel on April 12, 1999.  In February 2003, Judge Ronald Sabraw of the Alameda County Superior Court and Judge Maxine Chesney of the U.S. District Court for the Northern District of California granted final approval to settlements valued at over $40 million.  *See Mitchell, et al., v. American Fair Credit Association, Inc., et al.*, 99 Cal. App. 4th 1345 (2002) (first reported decision under the California Credit Services Act of 1984).

*In re LookSmart Litigation*, Case No. 02-407778 (Cal. Super. Ct. San Francisco County).  This nationwide class action suit was brought against LookSmart, Ltd. on behalf of LookSmart's customers who paid an advertised "one time payment" to have their web sites listed in LookSmart's directory, only to be later charged additional payments to continue service. The action involved claims for breach of contract and violation of California's consumer protection laws, among other things.  On October 31, 2003, the Honorable Ronald M. Quidachay granted final approval of a nationwide class action settlement providing cash and benefits valued at approximately $20 million.

*Steff v. United Online, Inc.*, Case No. BC265953, (Los Angeles Super. Ct.).   This nationwide class action suit was brought against NetZero, Inc. and its parent, United Online, Inc., by former NetZero customers.  The Plaintiffs alleged that Defendants falsely advertised their internet service as being unlimited and guaranteed for a specific period of time when it was not, in violation of Consumers Legal Remedies Act, Civil Code §§ 17500 et seq. and the Unfair Competition Law, Business And Professions Code §§ 17200 et seq.  The Honorable Victoria G. Chaney of the Los Angeles Superior Court granted final approval of a settlement that provides

full refunds to customers whose services were cancelled and additional cash compensation.  The settlement also places restrictions on Defendants' advertising.

***Mackouse v. The Good Guys - California, Inc.***, Case No. 2002-049656, (Alameda County Super. Ct.).  This nationwide class action lawsuit was brought against The Good Guys and its affiliates alleging violations of the Song-Beverley Warranty Act and other California consumer statutes.  The Plaintiff alleged that The Good Guys failed to honor its service contracts, which were offered for sale to customers and designed to protect a customer's purchase after the manufacturer's warranty expired.  In May 9, 2003, the Honorable Ronald M. Sabraw granted final approval of a settlement that provides cash refunds or services at the customer's election.

***Stoddard v. Advanta Corp.***, Case No. 97C-08-206-VAB (Del. Superior Ct.).   This nationwide class action lawsuit was brought on behalf of cardholders who were promised a fixed APR for life in connection with balance transfers, whose APR was then raised pursuant to a notice of change in terms. The Honorable Vincent A. Bifferato approved a $7.25 million settlement and appointed firm as co-lead counsel for the settlement class.

***Mager v. First Bank of Marin***, CV-S-00-1524-PMP (D. Nev.).  This nationwide class action was brought on behalf of people who were enrolled in First Bank of Marin's credit card program.  In May 2002, the Judge Pro of the U.S. District Court for the District of Nevada approved a settlement providing for cash and non-cash benefits to class members.

***In Re Medtronic, Inc. Implantable Defibrillators Product Liability Litigation***, MDL No. 05-1726 (JMR/AJB) (D.Minn.). Girard Gibbs served on the Discovery and Law Committees and provided legal, discovery and investigative support in this lawsuit, following a February 2005 recall of certain models of Medtronic implantable cardioverter defibrillator ("ICD") devices. Approximately 2,000 individual cases were filed around the country and consolidated in an MDL proceeding in District Court in Minnesota. The approximate 2,000 cases were settled in 2007 for $75 Million.

***Billiteri v. Securities America, Inc.***, Case No. 3:09-cv-01568-F (N.D. Tex.). Girard Gibbs served as lead counsel in an action against broker-dealer Securities America, Inc. and its corporate parent, Ameriprise, Inc. in connection with sales of investments in the Provident Royalties and Medical Capital investment schemes. Daniel Girard coordinated negotiations resulting in a $150 million settlement, with $80 million allocated to class plaintiffs represented by Girard Gibbs and $70 million allocated to individual investors who had initiated arbitration proceedings. The settlements returned over 40% of investment losses.

***In re American Express Financial Advisors Securities Litigation,*** Case No. 04-cv-01773-DAB (S.D.N.Y.).  Girard Gibbs served as co-lead counsel in this class action, brought on behalf of individuals who bought financial plans and invested in mutual funds from American Express Financial Advisors.  The case alleged that American Express steered its clients into underperforming "shelf space funds" to reap kickbacks and other financial benefits.  On July 13, 2007, the Court granted final approval to a cash settlement of $100 million in addition to other relief.

***Scheiner v. i2 Technologies, Inc., et al.***, Case No. 3:01-CV-418-H (N.D. Tex.).  Girard Gibbs represented lead plaintiff, the Kansas Public Employees Retirement System, and served as

20

co-lead counsel in this securities fraud class action on behalf of investors in i2 Technologies. The Hon. Barefoot Sanders approved cash settlements for $88 million from the company, its officers and its former auditor, Arthur Andersen LLP.  As part of the settlement, i2 agreed to institute significant corporate governance reforms.

*CalSTRS v. Qwest Communications, et al.,* Case No. 415546 (Cal. Super. Ct. San Francisco County).  Girard Gibbs represented the California State Teachers Retirement System in this opt-out securities fraud case against Qwest Communications, Inc. and certain of its officers and directors, as well as its outside auditor Arthur Andersen.  The case resulted in a precedent-setting $45 million settlement for California school teachers.

*In re Winstar Communications Securities Litigation*, Case No. 01 Civ. 11522 (S.D.N.Y) Girard Gibbs represents Allianz of America, Inc., Fireman's Fund and other large private institutional investors in federal securities litigation against Grant Thornton and other defendants arising out of their investments in Winstar Communications, Inc.  The firm has obtained settlements to date from Lucent Technologies and the individual officers and directors of Winstar, and is continuing to prosecute the case against Grant Thornton, outside auditor to Winstar.

*In re Prison Realty Securities Litigation*, Case No. 3:99-0452 (M.D. Tenn.).  Girard Gibbs served as co-lead counsel in this securities class action brought on behalf of investors against a real estate investment trust and its officers and directors, following defendants' alleged false statements made in the context of a merger between Corrections Corporation of America and CCA Prison Realty Trust and subsequent operation of the merged entity.  On February 13, 2001, the Court granted final approval to a settlement for over $120 million in cash and stock.

*In re Digex, Inc. Shareholder Litigation*, Consol. Case No. 18336 (Del. Ch. Ct. 2000). Girard Gibbs represented the Kansas Public Employees Retirement System, one of two institutional lead plaintiffs in this lawsuit whereby minority shareholders of Digex, Inc. sued to enjoin MCI WorldCom's planned acquisition of a controlling interest in Digex through a merger with Intermedia Communications, Inc., the majority shareholder.  In a settlement approved by Delaware Chancery Court on April 6, 2000, a fund consisting of $165 million in MCI WorldCom stock and $15 million in cash was secured for Digex shareholders, as well as non-cash benefits valued at $450 million.

*In re Oxford Tax Exempt Fund Securities Litigation*, Case No. WMN-95-3643 (D. Md.).  Girard Gibbs served as co-lead counsel in this class and derivative litigation brought on behalf of a real estate limited partnership with assets of over $200 million.  Settlement providing for exempt issuance of securities under section 3(a)(10) of Securities Act of 1933, public listing of units, and additional settlement benefits valued at over $10 million approved January 31, 1997.

*Calliott v. HFS, Inc.*, Case No. 3:97-CV-0924-L (N.D. Tex.).  Girard Gibbs intervened on behalf of an institutional client in this securities class action arising out of bankruptcy of Amre, Inc., a seller of home remodeling and repair services.  Girard Gibbs was designated lead plaintiff's counsel under Private Securities Litigation Reform Act.  Settlements for $7.3 million were approved August 1999 and December 2000.

*In re Total Renal Care Securities Litigation*, Case No. 99-01750 (C.D. Cal.).  This securities fraud action arose out of restatement of earnings by healthcare provider, brought under the PSLRA by the Louisiana Teachers' Retirement System and the Louisiana School Employees Retirement System.  Settled for $25 million and issuer's commitment to adopt comprehensive corporate governance reforms. Girard Gibbs served as liaison counsel.

*In re Towers Financial Corporation Noteholders Litigation*, MDL No. 994 (S.D.N.Y.).  This securities and RICO class action was brought against promoters and professionals associated with failed investment scheme described by United States Securities and Exchange Commission as "largest Ponzi scheme in U.S. history."  $6 million in partial settlements.  $250 million judgment entered against four senior Towers executives.  Girard Gibbs served as liaison counsel and as a plaintiffs' executive committee member.  See Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin, 945 F. Supp. 84 (S.D.N.Y.1996), rev'd, No. 97-7011, 1998 U.S. App. LEXIS 1448 (2d Cir. Jan. 28, 1998); In re Towers Financial Corporation Noteholders Litigation, 177 F.R.D. 167 (S.D.N.Y. 1997) ("class counsel--particularly Plaintiffs' Liaison counsel, Daniel Girard--has represented the plaintiffs diligently and ably in the several years that this litigation has been before me").

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL 1827 (N.D. Cal.).  Girard Gibbs serves as liaison counsel in this multi-district antitrust litigation against numerous TFT-LCD (Flat Panel) manufacturers alleging a conspiracy to fix prices, which has achieved settlements of more than $400 million to date.

*In re Natural Gas Antitrust Cases I, II, III and IV*, J.C.C.P. No. 4221 (Cal. Super. Ct. San Diego County).  Girard Gibbs served in a leadership capacity in this coordinated antitrust litigation against numerous natural gas companies for manipulating the California natural gas market, which has achieved settlements of nearly $160 million to date.

*Ho v. San Francisco Unified School District*, Case No. C-94-2418-WHO (N.D. Cal.).  This civil rights action was brought on behalf of a certified class of San Francisco public school students of Chinese descent to terminate racial and ethnic quotas imposed under 1983 desegregation consent decree. See Ho v. San Francisco Unified Sch. Dist., 965 F. Supp. 1316 (N.D. Cal. 1997), aff'd 147 F.3d 854 (9th Cir. 1998); see also 143 Cong. Rec. S6097, 6099 (1997) (statement of United States Senator Hatch referring to testimony of class representative before Senate Judiciary Committee).

Exhibit 3

**April 29, 2013**

**Matthew B. George, Esq.**
**Girard Gibbs LLP**
**Matter: SVTC WARN Act Distribution - Administration Cost Estimate**



## ADMINISTRATION COST ESTIMATE

**KEY ASSUMPTIONS:**

1 - Client will provide a complete distribution table including full name, SSN, address, and gross payment amount for all eligible Clas
    Members in one record per individual format.
2 - Gilardi will setup and manage QSF, calculate withholdings, and print/mail checks and necessary tax forms to eligible Class Memb
3 - Settlement Awards and necessary tax forms will be mailed together in a single distribution mailing.
4 - Residual funds will be distributed cy pres.

**CLASS SIZE:**

**Total Estimated Class Size**           **130**

| DISTRIBUTION SERVICES: | Unit Cost | | Volume | | Cost | Total |
|---|---|---|---|---|---|---|
| Settlement Fund Management (Incl. obtaining Tax ID) | $ | 90.00 | 3 | hrs | $ 270 | |
| Name/TIN Mismatch | $ | 90.00 | 5 | hrs | 450 | |
| Distribution Calculations | $ | 90.00 | 5 | hrs | 450 | |
| Distribution Preparation | $ | 90.00 | 5 | hrs | 450 | |
| Issue Checks | $ | 3.00 | 130 | | 390 | |
| Issue IRS Forms W-2 | $ | 1.00 | 130 | | 130 | |
| Estimated 1st Class Postage | $ | 0.460 | 130 | | 60 | |
| Report W-2 Information to IRS | $ | 350.00 | 1 | yr | 350 | |
| Settlement Fund Tax Reporting | $ | 2,500.00 | 1 | yr | 2,500 | |
| Staff hours handling check follow-up/reissues | $ | 90.00 | 3 | hrs | 270 | |
| Final Accounting Services (including cy pres distribution) | $ | 90.00 | 10 | hrs | 900 | |

**Total Estimated Distribution Cost**        **$    6,220**

**Administration Fee Cap ("not to exceed" cost):**        **$    5,000**